IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH STICKRATH, et al.,

    Plaintiffs,

v.

GLOBALSTAR, INC.,

    Defendant.

NO. C07-1941 TEH

<u>ORDER GRANTING
DEFENDANT'S SUMMARY
JUDGMENT MOTION</u>

    This matter came before the Court on Wednesday, October 29, 2008, on Defendant's Motion for Summary Judgment. Having carefully considered the parties' written and oral arguments, Defendant's Motion is GRANTED for the reasons set forth below.

**FACTUAL AND PROCEDURAL HISTORY**

    Plaintiff Kenneth Stickrath purchased a satellite phone from Defendant Globalstar. He sued Globalstar, alleging that Defendant failed to disclose known defects in its service that prevented him from using the service in the intended fashion. Stickrath seeks to represent a nationwide class of individuals who purchased a satellite telephone and related service from Defendant between April 2003 and 2007. Although Stickrath initially alleged that he had purchased his phone in 2004, Mr. Stickrath's deposition revealed that he actually purchased it in August or September of 2003. He cancelled his service on July 2, 2006.

    Plaintiff alleges that Defendant's satellite telephone service is extremely poor, but the gravamen of the complaint is that Defendant knew about material defects in its satellite

1 telephone service and failed to disclose such information.  Plaintiff claims that Defendant
2 knew its service was unusable for his purpose, and that he would not have purchased the
3 service or suffered damage had he known of these flaws.  Plaintiff asserts two causes of
4 action: one under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code
5 §§ 17200 *et seq.*, and another under California's Consumers Legal Remedies Act ("CLRA"),
6 Cal. Civ. Code §§ 1750 *et seq.*  Plaintiff contends that Defendant's failure to disclose
7 material information is unfair, unlawful, and fraudulent in violation of the UCL, and that it
8 constitutes prohibited practices under two sections of the CLRA: "[r]epresenting that goods
9 or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or
10 quantities which they do not have," Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that
11 goods or services are of a particular standard, quality, or grade . . . if they are of another."
12 Cal. Civ. Code § 1770(a)(7).

13      On September 17, 2007, the Court held a hearing on Globalstar's motion to dismiss
14 Plaintiffs' first amended complaint.  The Court orally granted in part and denied in part
15 Defendant's motion at the conclusion of the hearing and issued a written order explaining its
16 ruling on September 25, 2007.  The Court granted Plaintiffs leave to amend their complaint,
17 which they timely filed on October 17, 2007.  On February 6, 2008, the Court granted in part
18 and denied in part Defendant's motion to dismiss the second amended complaint.  Plaintiffs
19 filed a class certification motion on April 25, 2008.  On May 12, 2008, both parties stipulated
20 to the dismissal without prejudice of three of the named plaintiffs, leaving only Mr. Stickrath
21 as Plaintiff. Defendant filed a motion for summary judgment on July 22, 2008.  Both the
22 class certification and summary judgment motions are now pending before the Court.

23      Defendant moves for summary judgment based on three primary arguments:
24      1)    that Plaintiff's claims are barred because they were discharged in bankruptcy;
25      2)    that Plaintiff's claim under the Consumer Legal Remedies Act is time-barred
26             under the Act's three-year statute of limitations; and
27      3)    that Stickrath's claims fail because he cannot establish causation.
28

2

**LEGAL STANDARD**

Summary judgment is proper when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 982 (9th Cir. 2001). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322-23. However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**I.   Discharge in Bankruptcy**

Defendant contends that the June 17, 2004, order of the Delaware bankruptcy court discharged all of Stickrath's claims. Defendant interprets that order to mean that all "persons who had any claims against the former Globalstar entities as of June 29, 2004 were forever barred from pursuing those claims against the new Globalstar that emerged from bankruptcy. That entity– Globalstar, Inc., which is sued here– is thus immune from suit based on actions prior to June 29, 2004." Def.'s Mem. Supp. Summ. J. 5-6. Plaintiff rejects this contention, arguing that although discharge occurred, Stickrath "could not fairly have contemplated his

3

1  claims prior to Globalstar's reorganization because Globalstar fraudulently concealed
2  material information from him about its satellites and service prior to its discharge." Pl.'s
3  Mem. Opp. Summ. J. 1.  Plaintiff suggests that he did not know of Defendant's failure to
4  disclose until information regarding the defects in its satellites came to light in early 2007
5  through its filing of form 8-K in February and through its disclosures of malfunctions on its
6  website in April of that year.  He rejects Defendant's contention that he was on notice of his
7  claim due to the malfunctioning of his phone; he instead argues that Globalstar's
8  concealment of its fraud should not permit it to avoid liability for its fraudulent conduct.  He
9  maintains that without knowledge of his claim, it cannot be said to have arisen prior to the
10 discharge; he therefore argues that his claim against Defendant was not discharged.  The
11 remaining legal question is when Stickrath's claim arose.

      The Globalstar bankruptcy order reads in relevant part:

> [A]ll Entities who have held, hold or may hold Claims (whether or not allowed) against or Interests or GLP Partnership Interests in any of the Debtors or the Estates are, with respect to any such Claims (whether or not allowed) or Interests or GLP Partnership Interests, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting New Globalstar[.]

Edmondson Decl., Ex. A, ¶ 16.

      The Bankruptcy Code defines a "claim" as

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).  As a general matter, what qualifies as a "claim" for purposes of discharge in bankruptcy "is a straightforward issue of statutory construction" controlled by the bankruptcy code.  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

      The Ninth Circuit has further explained the definition of a claim:

> It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued. . . .  In *Jensen*, we held that once the California Department of Health Services ("Department") inspector discovered a serious environmental hazard on the debtors' property, its claim against the debtors was ripe for filing under the bankruptcy code as a pre-petition, contingent claim even though its CERCLA cause of action had not yet accrued. *See* 995 F.2d at 928, 931.  After the Jensens' bankruptcy proceedings closed, the Department filed a claim in bankruptcy court for cleanup costs under CERCLA. *See id.* at 926-27.  We held the claim was filed too late.  The Department's right to payment under CERCLA originated from the Jensens' "'prepetition conduct'" of which the Department had knowledge before the petition was filed and could "'fairly contemplate[ ]'" would result in a CERCLA claim. *Id.* at 930-31.  Thus, it should have been filed in the bankruptcy proceeding as a contingent claim; because it was not, it was discharged in the bankruptcy proceeding.

*In re Cool Fuel, Inc.*, 210 F.3d 999, 1006-07 (9th Cir. 2000) (internal citations omitted).  Yet as Judge Breyer declared in *In re Hexcel Corp.*, 239 B.R. 564, 570 (N.D. Cal. 1999), "the common thread running through the case law is that the [Bankruptcy] Code does not suggest that a creditor's claim is to be discharged if the parties could not reasonably contemplate the existence of that claim prior to the reorganization." He further explained:

> the definition of a "claim" for bankruptcy purposes is not boundless.  For example, this section does not include future rights to payment that are "unknown" and "unforeseeable." . . .  [A] claim cannot fall within the purview of section 101(5)-and thus cannot be discharged as a pre-petition claim-unless that claim could have been contemplated by the parties prior to the bankruptcy proceedings.  Any *future, unknown* claim that could not have been reasonably contemplated does not fall within the purview of section 101(5) and must not be discharged, even if the conduct giving rise to the claim took place before the bankruptcy proceedings.

*Id.* at 566-67 (italics in the original).  Plaintiff urges the Court to adopt this "fair contemplation" rule to hold that Globalstar's concealment of its fraud prevented Stickrath's claim from being discharged in bankruptcy.[1]

Stickrath relies on *In re Morgan*, 197 B.R. 892 (N.D. Cal. 1996) to justify his adherence to the fair contemplation test.  In that case, the court applied the fair contemplation test to resolve whether a fraud claim was discharged in bankruptcy. *Id.* at 898.  The court

---

[1] Another test for whether discharge has occurred is the "conduct approach," under which "if a debtor's conduct forming the basis of liability occurred prepetition, a claim arises when that conduct occurs, even though the injury resulting from this conduct was not manifest at the commencement of the case." *In re Hassanally*, 208 B.R. 46, 51 (B.A.P. 9th Cir. 1997).  As the conduct test focuses on when negligence claims arise, the fair contemplation test is better used in this fraud matter.

5

1  reasoned that the "adoption of this test will prevent bankruptcy from being used as a shield
2  for fraud by allowing fraud claims to go forward against debtors who concealed their fraud
3  prior to discharge." *Id.* There, the court indicated that negotiations preceding a contract in
4  which the parties mutually decided to omit a term about the allegedly fraudulent conduct
5  suggested that the plaintiff should have fairly contemplated the claim prior to discharge; this,
6  combined with other factors, led the court to conclude that the plaintiff's claims were
7  discharged in bankruptcy. *Id.* at 899.

8        The rule articulated in *Morgan* is intended to avoid rewarding defendants for
9  concealing their fraud. But, it does not apply to the current case because, like in *Morgan*,
10 there were enough facts to show that Stickrath had notice of the harm he subsequently
11 alleged to be fraudulent. As in *Morgan*, Stickrath's claim cannot survive summary judgment
12 as he has not identified facts demonstrating how this claim was outside his reasonable
13 contemplation based on his early knowledge of the phone's defective operation.[2] Although
14 prior to the bankruptcy discharge Stickrath lacked knowledge of the specific satellite defects
15 that Defendant later disclosed, his deposition testimony clearly demonstrates that he knew
16 the phone worked poorly shortly after he purchased it. This knowledge suffices under the
17 caselaw for the purposes of "fair contemplation." He offers no case that holds that
18 reasonable contemplation requires complete knowledge of all pertinent facts to avoid
19 discharge. Rather, the point of the fair contemplation rule is that plaintiffs must act when
20 they have notice of facts that would support a legal claim; otherwise, their legal claim is
21 discharged in bankruptcy. Globalstar has identified the absence of an issue of material fact
22 on this count, and Stickrath has not met his burden of showing a genuine issue remaining for
23 trial.

24       Therefore, as a matter of law the Court concludes that Stickrath's claims related to
25 Defendant's pre-discharge conduct were within Stickrath's reasonable contemplation prior to

---

[2] Among other statements that demonstrated this early knowledge, at his deposition, Stickrath stated: "You know, the first year, it was probably the year that [the phone] worked the best. My best estimate would be it probably–when we had a signal, would work about 50 percent of the time." Edmondson Decl., Ex. D, at 49:20-23.

the entry of the bankruptcy order in June, 2004.  Accordingly, the Court holds that Stickrath's claims from this time period were discharged in the bankruptcy order.

## II.     Statute of Limitations

Defendant claims that because Stickrath purchased his phone in 2003, the statute of limitations had run before he commenced suit in April 2007; on this ground, Defendant asserts that Plaintiff's CLRA claim is time-barred on its face.  Plaintiff argues that because the Court has previously held that his claim sounds in fraud, the statute did not begin to run until he learned of the facts constituting Defendant's fraud.  Stickrath further argues that Defendant should be estopped from pleading the statute of limitations because of Defendant's acts of fraudulent concealment.

California Civil Code § 1783 states that "[a]ny action brought under the specific provisions of [the CLRA] shall be commenced not more than three years from the date of the commission of such method, act, or practice."  The CLRA declares unlawful a wide array of specific conduct, which it generally characterizes as "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Plaintiff specifically alleges that Defendant committed violations of two subsections of CLRA by fraudulently omitting material facts about the phone's defects at the time of sale.

However, "[t]he statute of limitations for a claim sounding in fraud is similarly three years and 'is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting fraud or mistake.'"  *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1100 (N.D. Cal. 2007) (citing Cal. Civ. Proc. Code § 338(d)).  Plaintiff asks the Court to apply the discovery rule since this case sounds in fraud, and urges the Court to adopt a formulation of that rule under which the statute does not begin to run until discovery of all elements of the cause of action, instead of applying the standard three-year period.

7

The California Court of Appeal has held that "the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983). Under the discovery rule, a "limitation period does not begin until a cause of action accrues, i.e., all essential elements are present and a claim becomes legally actionable. Developed to mitigate the harsh results produced by strict definitions of accrual, the common law discovery rule postpones accrual until a plaintiff discovers or has reason to discover the cause of action." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1029 (Cal. Ct. App. 2000). The discovery rule does not require *all* facts to be discovered for accrual to occur. It only postpones accrual until the fraud is discovered or reasonably discoverable. Furthermore, the discovery rule is to be applied in limited circumstances that justify the temporary suspension of the statute of limitations:

> A common thread seems to run through all the types of actions where courts have applied the discovery rule. The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect. In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance.

*April Enters*, 147 Cal. App. 3d at 831.

Other judges of the Northern District California have applied similar logic in contemplating consumer knowledge in the context of class action cases. In *Falk*, the plaintiff class had purchased trucks with a latent defect in the speedometer that only became apparent after the expiration of the warranty. *Falk*, 496 F. Supp. 2d at 1092, 1100. The statute of limitations question was whether plaintiffs were on notice of the defect in their vehicles' speedometers at the time of purchase, based on undated internet postings that simultaneously informed both defendant and members of the plaintiff class of the defect. *Id.* at 1100. The defendant there argued that websites put both parties on notice at the same time; plaintiffs

8

1  maintained that the defendant had superior knowledge of the defect. *Id.* The court held that
2  plaintiffs' case should survive the statute of limitations argument at the pleadings stage
3  because of the latency of the defect and the defendant's superior knowledge. *Id.*

4  In another case regarding defects in automobiles, the court applied the discovery rule
5  to deny defendant's motion for summary judgment with regard to the claims of certain class
6  members. *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1148 (N.D. Cal. 2005).
7  There, the court concluded that although the discovery rule means that the "statute of
8  limitations runs 'from the time a reasonable person would have discovered the basis for a
9  claim[,]' [t]he mere fact that a consumer's manifold failed does not necessarily mean that that
10 person should have discovered Defendant's alleged non-disclosure at that time." *Id.* The
11 court acknowledged, however, that customers' suspicions that defendant was responsible for
12 the defects showed a dispute of fact as to whether defendants were on notice of their claim.
13 *Id.*

14 The facts in the instant matter indicate a situation removed from that in *Falk* and
15 *Chamberlan*, and lacking the factors articulated by the California Court of Appeal as
16 justification for application of the discovery rule. Here, Stickrath was immediately on notice
17 of his phone's poor functioning upon purchase. As a result, that it was defective was not
18 difficult for Plaintiff to detect; it was patently obvious and lacked the latency present in *Falk*.
19 Stickrath simply was not ignorant of the consumer harm he experienced. Although
20 Globalstar possessed more technical knowledge of the cause of the failed calls, the
21 malfunctioning of the phone was apparent to a casual consumer/user. Stickrath's deposition
22 testimony demonstrates this to be the case, as he rapidly realized the phone did not work.
23 That he lacked technical knowledge of the cause of his phone's defective operation does not
24 mean he lacked knowledge of the phone's defects.

25 These facts all militate against the application of the discovery rule, and instead
26 indicate that the appropriate statute of limitations period runs three years from the date of the
27 commission of the method, act, or practice that allegedly violated the CLRA. In this case, as
28 Plaintiff asserts that Defendant's nondisclosure at the point of sale qualified as the primary

9

violation of the CLRA, the statute had clearly run at the time Plaintiff filed suit. Accordingly, Plaintiff's claim as to the point-of-sale violation of the CLRA is time-barred.

Plaintiff also argues that Defendant's fraudulent concealment should estop Globalstar from relying on the statute of limitations. In order to claim an equitable estoppel or fraudulent concealment theory, the plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM, 2006 WL 4749756, at *43 (C.D. Cal. 2006) (unpublished). Plaintiff's case does not reach this bar. In reality, as Stickrath had access to full knowledge of the defect of the phone, he has not offered adequate facts to show concealment and due diligence, which would be necessary to support a theory of equitable estoppel. Tolling the statute for fraudulent concealment is inappropriate.

### III. Claim Based on Contract Renewal

In his opposition memo, Stickrath asserts that he "maintains separate claims against" Globalstar arising from his renewal of his contract and purchase of additional minutes in 2005, at which time he alleges that Globalstar again failed to disclose material defects in its satellite and service and told Plaintiff that service was to improve. Stickrath asserts that claims arising from this conduct accrued after the discharge in bankruptcy, and within the three-year statutory period, and that these claims should survive summary judgment. A careful review of the second amended complaint reveals that Plaintiff pleaded facts only regarding the initial purchase of his phone– what Defendant calls a "point-of-sale" theory. Without having pleaded a cause of action related to this secondary sale, Plaintiff cannot survive summary judgment on this basis.

### IV. Class Certification

Defendant urges this Court that it is proper to close this case after granting Defendant summary judgment in light of the lack of a class representative. Globalstar relied in oral

10

1  argument on *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003), for
2  the proposition that a class action case without a class representative must be closed.  In that
3  case, the Ninth Circuit held that where class certification had already occurred, the
4  determination that the class representative lacked standing to bring the suit required the court
5  to vacate the certification and dismiss the suit.  *Id.* at 1022-23.  There, the standing defect
6  related to whether the plaintiff had a substantive legal claim; in the absence of the claim that
7  was the legal issue unifying class members, a class representative without standing was never
8  "a member of the class she was named to represent" since standing is a threshold issue, and
9  thus the case had to be dismissed.  *Id.*  The court distinguished the *Lierboe* factual scenario
10 from one in which the class representative was removed from the case due to mootness, in
11 which case "substitution or intervention" may be possible.  *Id.* at 1023.  Thus, whereas the
12 dismissal of a putative class representative whose claim is found to be barred on the basis of
13 time does not invalidate the claims of the entire class, a standing defect invalidates the entire
14 case.  Discharge in bankruptcy and statue of limitations issues are likewise time-bars that do
15 not reflect on whether Stickrath was ever properly a member of the class he sought to
16 represent.

17        The Court thus concludes that it is appropriate, both legally and as a matter of judicial
18 economy, to grant the purported Plaintiff class leave to amend.  An amended complaint will
19 be due no later than January 19, 2009.  Plaintiff counsel emphasized on October 29, 2008 at
20 oral argument that she has "a database filled with people who have called us, irate about their
21 service and their problems. . . .  But we had people who were ready and raring to go, because
22 they're mad."  Rep. Tr. at 27:12-14, 17-18.  In light of the apparently ready availability of a
23 substitute class representative and Plaintiff counsel's failure to timely note the defects in Mr.
24 Stickrath's claim, the Court will grant no additional time to amend the complaint.

25

26 **CONCLUSION**

27        For the reasons discussed above, Defendant's motion for summary judgment is
28 GRANTED.  Plaintiff's motion for class certification is VACATED as moot.  The Court

11

grants Plaintiff leave to amend until **January 19, 2009**, in order to substitute a new class representative.

**IT IS SO ORDERED.**

Dated:   December 22, 2008

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT